# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 4, 2002 Session

## STATE OF TENNESSEE v. JIMMY WAYNE DUDLEY

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-252     Roy B. Morgan, Jr., Judge**

---

### No. W2001-01381-CCA-R3-CD - Filed May 16, 2003

---

A Madison County grand jury indicted the defendant for aggravated assault. Subsequently a trial jury convicted the defendant as charged. By the time of the sentencing hearing, the parties had reached an agreement involving a pending probation revocation matter, a pending assault charge, and the instant conviction. With respect to the probation revocation, the trial court ordered the defendant to serve four years at 30% as a standard offender. On the assault conviction, the court ordered the defendant to serve eleven months and twenty-nine days at 75%. Finally, the defendant received an agreed upon four-and-one-half-year sentence to be served at 30% as a standard offender for the aggravated assault conviction at issue in this case.[1] The sentences were ordered run in such a manner that the defendant by agreement received an effective sentence of eight and one-half years. The defendant later filed a motion for new trial and an amended motion for new trial unsuccessfully raising five issues. Through this appeal the defendant continues to assert that 1) the evidence is insufficient to support his aggravated assault conviction; 2) the trial court erred in not allowing the defense to present evidence that the victim's bodily injury resulted from another incident, not the defendant's purported use of a deadly weapon; and 3) the trial court erred in admitting a photograph allegedly showing the victim's injuries and in admitting a shirt allegedly worn by the victim at the time of the offense as these items were not provided to the defense in pre-trial discovery. However, after reviewing the record and relevant authorities, we find that these contentions lack merit or have been waived. We, thus, affirm the lower court's denial of relief.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Didi Christie, Brownsville, Tennessee, for the appellant, Jimmy Wayne Dudley.

---

[1] Other conditions including certain restitution and a jury-imposed fine of five hundred dollars accompanied this sentence.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

On December 20, 1998, Jimmy Bowman, Danny Dudley, and the defendant went to Cody's, a country-western bar in Jackson, Tennessee. Also there for a Christmas/birthday celebration were Kevin Fowler, Deva Fowler, Jimmy Pierce, Jennifer Tuten and their friends. In the early morning hours a dispute arose based on a comment allegedly made to Deva Fowler by Jimmy Bowman. Deva's husband Kevin went to Bowman demanding an apology. Though later denying that he would ever have made the inappropriate comment, Bowman apologized. At this point, the Fowlers and Bowman along with Randy Hall, a manager at the time at Cody's, seemed to believe that trouble had been averted. Nevertheless, soon thereafter a fight broke out between the defendant and Jimmy Pierce, the victim in this case.

According to Pierce the defendant approached him and inquired what was happening (presumably with Bowman and the Fowlers). Pierce responded, "Man, I think there was a problem . . . but everything is cool now" and told about the apology. Pierce stated that the defendant then indicated that if Pierce had a problem with Bowman, that Pierce had a problem with the defendant. Pierce testified that immediately thereafter the defendant hit him on the left cheekbone with a beer bottle. Pierce recounted that after inflicting the blow, the defendant still had the broken bottle in his hand; thus, the victim admitted, he had fought back against the defendant because he "wasn't in favor of being stabbed with" the remainder of the bottle. As a result of the altercation, the victim suffered facial injuries including a deep cut to the cheekbone requiring sutures to close.

In presenting its case, the defense called Jimmy Bowman and Danny Dudley. Beyond providing information about the incident involving the Fowlers, Bowman stated that on the night in question, the club was noisy and crowded making him wonder "how anybody can say what they saw 'cause . . . everything was going chaos [sic]" at the time. Bowman did relate that he had not seen a broken beer bottle in the defendant's hand at any point during the incident. However, he also acknowledged that he had not seen who had started the fight and that he would not know if the defendant had struck the victim in the face with a beer bottle. Dudley, the defendant's brother and a University of Florida fan, indicated that earlier that night in the patio area of Cody's, Pierce had begun a verbal altercation over the University of Tennessee and the University of Florida football programs. Dudley further stated that he had gone inside to avoid conflict. Once inside, he was nearby when the discussion took place between the Fowlers and Bowman. Like Bowman, this witness acknowledged that he had not seen the fight between Pierce and the defendant begin, but added that to his knowledge the defendant had not started a fight. He also testified that he had not seen the defendant holding a broken beer bottle that night.

The jury convicted the defendant of aggravated assault. Through the instant appeal the defendant raises four claims seeking relief from this conviction.

**Sufficiency**

The defendant first asserts that the evidence is insufficient to support his conviction. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," case law provides that "a criminal offense may be established exclusively by circumstantial evidence." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

Turning to the language of the aggravated assault statute, Tennessee Code Annotated section 39-13-102, in pertinent part, provides that "[a] person commits aggravated assault who: (1) [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and: . . . (B) [u]ses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). According to the language of the defendant's indictment, the relevant portion of section 39-13-101 refers to causing another bodily injury. See id. § 39-13-101(a)(1). Furthermore our code defines bodily injury as "includ[ing] a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty" and defines a deadly weapon as "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or . . . [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id. § 39-11-106(a)(2), (5).

In the instant case, witnesses testified that the defendant had approached and struck the victim in the face with a beer bottle without the victim's first making any aggressive movement toward the defendant. The victim indicated that he suffered a deep laceration requiring sutures to the cheek hit by the bottle. Thus, viewing the evidence in the light most favorable to the State, the proof

supports a finding that the defendant intentionally or knowingly caused the victim bodily injury by use of a deadly weapon.[2] This issue lacks merit.

## Excluded Potential Proof Regarding the Cause of the Victim's Bodily Injury

In his second issue, the defendant avers that the trial court erred in preventing him from eliciting testimony that the victim's injuries had been "caused by an event other than the [d]efendant's alleged use of a deadly weapon." More specifically, the defendant contends that the victim's injuries actually resulted from an altercation outside of Cody's on the night in question. The State responds that the defendant has waived this matter by failing to make the relevant offers of proof.

We agree that "in order to reverse a trial court's ruling to exclude evidence, a substantial right of a party must be affected and, if not apparent from the context, 'the substance of the evidence and the specific evidentiary basis supporting admission' must be made in an offer of proof." State v. Robinson, 73 S.W.3d 136, 150 (Tenn. Crim. App. 2001) (quoting Tenn. R. Evid. 103(a)(2)).With this in mind, we again consider the record in the instant case.

Defense counsel attempted to pursue this line of questioning on two occasions at trial: first with Deva Fowler and then with the victim. The prosecution objected in the first instance, and the trial court sustained the objection. When the State subsequently believed that defense counsel's line of questioning was returning to this area, a second bench conference on this matter occurred in which the prosecutor reminded the court of its earlier ruling. During this exchange the trial court cautioned defense counsel saying, ". . . you know what the ruling is. . . . I assume he's not going to get into that." In both instances, defense counsel then abandoned this topic and did not seek to make an offer of proof regarding how the witnesses would have responded.

From the record before us, we have no indication of what responses these two State witnesses would have made to counsel's questioning. Although it appears that questions concerning how the victim received his wounds could have been elicited relevant information, lacking an offer of proof, we cannot appropriately evaluate the defendant's contention on this point. See Tenn. R. Evid. 103(a)(2); and See e.g., State v. James McKinley Cunningham, No. M1999-01995-CCA-R3-CD, 2000 WL 1520247, at *5 (Tenn. Crim. App. at Nashville, Oct. 13, 2000).

## Admission of Contested Evidence

The defendant next asserts that the trial court erred in admitting a photograph of the victim's injured face and in admitting a shirt allegedly worn by the victim at the time of the offense. For both of these claims, the defendant argues that the items should have been excluded because the State failed to provide them in pre-trial discovery.

---

[2] Under appropriate circumstances a bottle can satisfy the deadly weapon element of aggravated assault. See, e.g., State v. Albert King, No. 01C01-9301-CC-00042, 1993 WL 539139, at *2 (Tenn. Crim. App. at Nashville, Dec. 30, 1993).        .

Tennessee Rule of Criminal Procedure 16(a)(1)(C) governing the discovery of documents and tangible objects states that

> [u]pon request of the defendant, the State shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are <u>within the possession, custody or control of the State</u>, and which are material to the preparation of the defendant's defense or are intended for use by the State as evidence in chief at the trial, or were obtained from or belong to the defendant.

Tenn. R. Crim. P. 16(a)(1)(C) (emphasis added). However, even if a defendant demonstrates that the prosecution failed to comply with the mandates of discovery, "evidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with the discovery rules and the prejudice cannot be otherwise eradicated." <u>State v. Leon Goins</u>, No. W1999-01681-CCA-R3-CD, 1999 WL 1531111, at * 2 (Tenn. Crim. App. at Jackson, Dec. 27, 1999); <u>see also</u> <u>State v. Garland</u>, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981).

In objecting at trial to the admission of the photographic evidence, defense counsel in the instant case claimed that he had asked the prosecution if it had any photographs because the State's file indicated that some existed.[3] Defense counsel added that the prosecutor had claimed to have none. A later comment by the State suggests that the photographs mentioned in the file were not those provided by the victim and that the defense did not make "a specific request" for the State to obtain those photographs. However, in the hearing of the defendant's new trial motion, the prosecution stated, "That photograph is referenced in the discovery materials."

More specifically addressing the timing of providing the defense the photographs for review, the prosecutor stated that the photographs at issue had been given to him that morning by the victim Mr. Pierce. Defense counsel had already acknowledged that the prosecution had shown him the contested photographs the morning of trial. After clarifying that the photos had not been in the possession of law enforcement, the trial court allowed the State to introduce one of them.

Regarding the aforementioned shirt with blood on it, a similar exchange took place. Defense counsel again complained that this article had not been provided to him in discovery.[4] He argued that "there's no way of knowing whether that's deer blood or possum blood or whatever" on the soiled shirt. The trial court asked the prosecutor if it was his contention that "the [d]efendant [sic] has had his shirt and produced it today when he came to court?" The State replied, "I had it today. I had it today when he [the victim] brought it in." The trial court then found the shirt admissible if the victim could identify the item and whether its condition accurately reflected its condition on the night of the offense. The victim later testified that the shirt, with a few additional wrinkles, looked as it had that night.

---

[3] We observe that the record does not contain a copy of discovery material referencing photographs.

[4] The defendant also objected based upon a lacking chain of custody claim. He pursued this claim in his new trial motion but has not raised it in this appeal.

After reviewing the record, we find that the defendant has failed to show that the State had possession, custody, or control of these items. Furthermore, were we to find that the State had not complied with discovery, the defendant has failed to argue how he was in any way prejudiced by this non-compliance. Moreover, he made no motion for a continuance to further examine these items. For these reasons we determine that the defendant's claim merits no relief.

## **Conclusion**

For the foregoing reasons we find that the defendant's issues lack merit or are waived. Accordingly, we AFFIRM the lower court's actions.

_____
JERRY L. SMITH, JUDGE