IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. ROBERT WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-06803     Chris Craft, Judge**

_____

**No. W2004-01686-CCA-R3-CD  - Filed May 27, 2005**

_____

The defendant, Robert Williams, was convicted by a Shelby County Criminal Court jury of aggravated burglary, a Class C felony,  and sentenced by the trial court as a career offender to fifteen years in the Department of Correction.   The sole issue he raises on appeal is whether the circumstantial evidence presented in his case was sufficient to support his conviction.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Robert Wilson Jones, Shelby County Public Defender, and Tony N. Brayton, Assistant Public Defender, for the appellant, Robert Williams.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 20, 2003, Shenika Thompson returned to her home in the Chickasaw Place Apartments in Memphis to find the glass in the back door of her apartment broken out and several valuables missing, including a piggy bank full of change, a PlayStation, and a radio.  A short time later, the apartment complex's maintenance supervisor discovered the defendant, a temporary employee assigned to perform grounds maintenance at the complex, with the victim's PlayStation and a large amount of change concealed in a pair of pants in his possession. The following day, painters working in a vacant apartment the defendant had been assigned to clean the day of the

burglary found the victim's radio hidden inside a large plastic garbage bag in a closet of the apartment.

At the defendant's aggravated burglary trial, the victim testified that she and her infant son left her apartment at about 9:00 a.m. on June 20, 2003, to visit her sister and returned to the apartment between 3:30 and 4:00 that afternoon. She said she first noticed that her radio and speakers were missing. Upon further investigation, she discovered that the glass in her back door had been broken out, a PlayStation game was missing from her living room, and her son's piggy bank had been taken from the dresser in her bedroom. The victim testified that her furniture, which was new, and her twenty-seven-inch Phillips flat screen television were still in the apartment.

The victim testified she immediately notified the apartment police, who sent an officer to her apartment to take a report. About twenty minutes later, she went to the management office to report the burglary. Shortly thereafter, a maintenance employee asked that she return to the office. When she arrived, she saw the defendant, three Memphis police officers, a large amount of change on a desk, and her PlayStation game, which she was able to positively identify by the mark she had placed on it. At the request of the maintenance employee, she returned to the management office the next day and identified her radio, which was inside a large garbage bag. Approximately one week later, her child's father found the broken piggy bank on the ground on the other side of a gate behind her apartment. The victim acknowledged that the Memphis police officers did not come to her apartment and that the security officer who responded to her call did not take any photographs or process the scene for fingerprints.

Memphis Police Officer Arlanda Jackson, who was working her second job as a security officer for the apartment complex when the victim called to report the burglary, testified that one of the window panes in the victim's back door was broken out and that she assumed it was the entry point for the burglar. She said she took the pertinent information, including the description of the stolen items, from the victim at the apartment and then returned to the security office to complete her report. Later that day, she went to the maintenance office in response to a call from one of the maintenance workers. When she arrived, she found that the defendant was being detained in the office and learned that a PlayStation and a "whole lot of change" had been recovered. In response, she called the Memphis Police Department, which sent two officers to the scene. Officer Jackson acknowledged she did not take any photographs of the victim's apartment and testified that, to her knowledge, neither of the other two officers went to the apartment.

Apartment maintenance supervisor Andre Shelton testified that on the day of the burglary, the defendant, a temporary employee, was assigned to clean an area of the grounds near the victim's apartment as well as a vacant apartment that was being prepared for painting. He said that the defendant came that day at about noon to the break room where he and Clarence, another permanent maintenance employee, were eating lunch. However, instead of joining them, the defendant retrieved two or three large, industrial-sized plastic garbage bags and left again. Shelton testified the defendant's behavior struck him as unusual because his regular practice was to eat lunch with the other employees. In addition, the defendant was not being paid to work during the lunch hour.

-2-

Shelton testified that the defendant, who had changed clothes and had a pair of pants rolled up and lying on a desk, appeared unusually anxious to leave at the end of the day, repeatedly telling him at 4:45 p.m. that he was ready to go and urging him to "come on," despite the fact that they did not ordinarily leave until 5:00 p.m. Shelton said he asked the defendant, "[W]hat's this?" as he touched the pants and the defendant replied that it was some toys he had found. Not believing the defendant, he unwrapped the pants and found a PlayStation game concealed inside. In the process, "a large amount of pennies" fell to the floor. Shelton testified that Clarence returned from the manager's office at about that time and told him the victim had just reported a burglary at her apartment, and a PlayStation game and piggy bank had been stolen. He said Clarence went back to inform the manager of their discovery and the manager in turn sent the police to the maintenance office.

Shelton testified that the next day some painters working in the vacant apartment the defendant had cleaned the previous day showed him a radio they had found in a closet of the apartment, which was tied inside the same type of plastic garbage bag as the ones the defendant had retrieved from the break room. He said he took the radio to the manager and then went to get the victim, who identified the radio as hers. According to Shelton, the defendant had been left alone to perform his assigned work on the day of the burglary.

The defendant elected not to testify and rested his case without presenting any proof.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the evidence was sufficient to support his conviction. Noting the lack of any physical evidence linking him to the crime scene, the defendant argues that the circumstantial evidence, including his possession of the recently stolen items and access to the vacant apartment, was insufficient to exclude every other reasonable hypothesis save that of his guilt of the offense. The State responds that the defendant's explanation of how he came into possession of the PlayStation and change was not reasonable in light of the cumulative evidence presented in the case, from which the jury could have reasonably inferred beyond a reasonable doubt that he broke into the victim's apartment and stole the items. We agree with the State.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Circumstantial evidence alone may be sufficient to support a conviction in Tennessee. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). If based entirely on circumstantial evidence, however, the evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" Tharpe, 726 S.W.2d at 900 (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). The standard for appellate review is the same whether the conviction is based on direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of aggravated burglary, which is defined as burglary of a habitation. See Tenn. Code Ann. § 39-14-403(a) (2003). Burglary is defined:

> (a) A person commits burglary who, without the effective consent of the property owner:
>
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
>
> (3) Enters a building and commits or attempts to commit a felony, theft or assault; or
>
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Id. § 39-14-402(a). "[U]nsatisfactorily explained possession of recently stolen property may be sufficient in and of itself to establish a burglary." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995) (citing State v. Hamilton, 628 S.W.2d 742 (Tenn. Crim. App. 1981)).

Viewed in the light most favorable to the State, the evidence was sufficient to support the defendant's conviction for aggravated burglary. The proof at trial established that someone broke into the victim's residence during the daytime hours on June 20, 2003, and stole the victim's radio, speakers, PlayStation game, and a piggy bank containing a large amount of change but did not take the victim's large television set or other bulky items. A short time after the victim reported the burglary, the apartment complex's maintenance supervisor discovered the victim's PlayStation game and a large amount of change concealed in a pair of pants that belonged to the defendant, who had worked that day in an area near the victim's apartment and who appeared unusually anxious to leave the premises at the end of the day. The next day, the victim's radio was discovered hidden in the closet of a vacant apartment the defendant had been assigned to clean the day of the burglary, and inside the same type of plastic bag the defendant had retrieved from the break room the previous day. In addition, the defendant had been left alone to work on the day of the burglary and had apparently worked through his usual lunch hour despite the fact that he was not paid to do so. From all these facts, a rational jury could have reasonably inferred beyond a reasonable doubt that the defendant burglarized the victim's apartment. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction for aggravated burglary.

## CONCLUSION

We conclude that the circumstantial evidence in the case, viewed in the light most favorable to the State, was sufficient to support the defendant's conviction for aggravated burglary. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE